**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| Gerri Cherry, Personal Representative of<br>the Estate of Alonzo Smith, Deceased<br>12811 Peace Drive<br>Ft. Washington, Maryland 20744 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   Case No.: _____<br>) |
| The District of Columbia | )<br>) |
| Serve: Muriel Bowser<br>Mayor of the District of Columbia<br>John A. Wilson Building<br>1350 Pennsylvania Ave., NW<br>Washington, D.C. 20004 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| Karl A. Racine<br>Attorney General of the District<br>of Columbia<br>441 4th St., NW,<br>Washington, D.C. 20001 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| Alonzo Wilson<br>6066 Red Squirrel Place<br>Waldorf, Maryland 20603 | )<br>)<br>)<br>) |
| and | )<br>) |
| Officer Vega- Special Police Officer<br>Blackout Investigation and Security<br>Services Inc.<br>3475 Leonardtown Road<br>Waldorf, Maryland 20601 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |

Blackout Investigation and Security          )
Services Inc.                                )
3475 Leonardtown Rd.                         )
Waldorf, MD 20601                            )
                                             )
      Serve: Lorenzo P. Barrett Jr.     )
      1015 15th St., NW, Suite 1000     )
      Washington, D.C. 20005            )
                                             )
and                                          )
                                             )
Black Out Security Services Inc.             )
14207 Kathleen Lane                          )
Brandywine, MD 20613                         )
                                             )
      Serve: Kenneth S. Goodwin II      )
      14207 Kathleen Lane               )
      Brandywine, MD 20613              )
                                             )
and                                          )
                                             )
Vantage Management Inc.                      )
20316 Seneca Meadows Parkway                 )
Germantown, Maryland, 20876                  )
                                             )
      Serve: CT Corporation System      )
      1015 15th St., NW, Suite 1000     )
      Washington, D.C. 20005            )
                                             )
and                                          )
                                             )
MP PPH, LLC                                  )
555 Broadhollow Rd., Suite 200               )
Melville, NY 11747                           )
                                             )
      Serve: Incorporating Services LTD. )
      1100 H St., NW, Suite 840         )
      Washington, D.C. 20005            )
                                             )
and                                          )
                                             )
John Doe #1-Special Police Officer           )
                                             )
and                                          )
                                             )
John Doe #2-Special Police Officer           )

and                                          )
                                             )
John Doe #3-Company                          )
                                             )
and                                          )
                                             )
John Doe #4-Property Manager                 )
                                             )
and                                          )
                                             )
John Doe #5-Property Owner                   )
                                             )
Defendants.                                  )
──────────────────────────────────

## COMPLAINT & JURY DEMAND

COMES NOW Plaintiff Gerri Cherry, Personal Representative of the Estate of Alonzo Smith, Deceased, by and through her undersigned counsel, John J. Yannone and Price Benowitz LLP, and files this Complaint against the above named Defendants, and for reason states as follows:

### PARTIES

1.   At all times relevant hereto, Mr. Alonzo Smith ("Smith") was a citizen of the United States of America and an adult resident of Washington, D.C.

2.   At all times relevant hereto, Plaintiff Gerri Cherry ("Plaintiff") is and was a citizen of the United States of America and an adult resident of Maryland.  She is the mother and next friend of M.C., a minor child of Smith, an interested party to this action.

3.   Plaintiff is the Personal Representative of the Estate of Alonzo Smith, duly appointed by the Probate Court of the District of Columbia on or about February 5, 2016.

4.   At all times relevant hereto, the District of Columbia ("District"), by and through its agents, servants, and/or employees, had the authority to appoint Special Police Officers ("SPOs") for the special purpose of protecting property and persons on the premises of his or her

employer.  This commission authorizes SPOs to have the same powers as law enforcement officers to arrest without warrants for offenses committed within premises to which their jurisdiction extends.  The Mayor of the District of Columbia may and can issue rules governing SPOs pursuant to D.C. Code § 5-129.02.

5.   At all times relevant hereto, Defendant Alonzo Wilson ("Wilson") or John Doe #1 is and was a citizen of the United States of America and a resident of the State of Maryland.  He was a SPO commissioned by the Mayor of the District of Columbia pursuant to D.C. Code § 5-129.02, was acting individually and under the color of state law, and was employed by Blackout Investigation and Security Services Inc. and/or Black Out Security Services Inc., who assigned him to ensure the safety and security of the premises located at Marbury Plaza Apartments located at 2300 Good Hope Road, SE, Washington, DC 20020 ("MPA").  At all times relevant hereto, Wilson was acting on behalf of Blackout Investigation and Security Services Inc. and/or Black Out Security Services, Inc. and within the scope of his authority, agency, and/or employment.

6.   At all times relevant hereto, Officer Vega ("Vega") or John Doe #2 is and was a citizen of the United States and a resident of Maryland.  He was a SPO commissioned by the Mayor of the District of Columbia pursuant to D.C. Code § 5-129.02, was acting individually and under the color of state law, and was employed by Blackout Investigation and Security Services Inc. and/or Black Out Security Services, Inc., who assigned him to ensure the safety and security of the premises located at the MPA.  At all times relevant hereto, Vega was acting on behalf of Blackout Investigation and Security Services Inc. and/or Black Out Security Services, Inc. and within the scope of his authority, agency, and/or employment.

7.    At all times relevant hereto, Blackout Investigation and Security Services Inc. and/or Black Out Security Services, Inc. or John Doe #3 is and was a foreign corporation with a principal place of business at 3475 Leonardtown Rd., Waldorf, MD 20601 and 14207 Kathleen Lane, Brandywine, Maryland 20613, respectively, ("Blackout").

8.    At all times, relevant hereto, Vantage Management, Inc. or John Doe #4 is and was a foreign corporation with a principal place of business at 20316 Seneca Meadows Parkway, Germantown, Maryland, 20876 ("Vantage").  Vantage was responsible for managing the day to day operations of MPA including, but not limited to, hiring security to ensure the safety of the residents, as well as to ensure that the facilities and common areas were safe and secure.

9.    At all times relevant herein, MP PPH, LLC or John Doe #5 is and was a local limited liability company with its principal place of business located at 555 Broadhollow Road, Suite 200, Melville, New York 11747 and is the owner of the MPA ("MP").

10.    At all times relevant hereto, Beverly Smith is and was a citizen of the United States of America and is was an adult resident of the District of Columbia and is the biological mother of Smith and an interested party to this action.

11.    At all times relevant hereto, Latayah Brown is and was a citizen of the United States of America and is an adult resident of the State of Georgia.  She is the mother and next friend of C.S., a minor child of Smith, an interested party to this action.

12.    At all times relevant hereto, Suoinoleht Burden is a citizen of the United States of America and is an adult resident of the State of Maryland.  She is the mother and next friend of D.B., a minor child of Smith, an interested party to this action.

## JURISDICTION AND VENUE

13.    This action arises under the Constitution and laws of the Unites States and the District of Columbia and is brought pursuant to 42 U.S.C. § 1983.

14.    Jurisdiction is conferred on this matter pursuant to 28 U.S.C. §1331 and §1367.  Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988, et seq.

15.    This court has personal jurisdiction over Defendants as the unlawful acts and/or omissions are alleged to have occurred in the District of Columbia.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as all of the principal events giving rise to this action took place in the District of Columbia.

17.    The District was given lawful notice of this claim pursuant to D.C. Code §12-309 on or about April 26, 2016, through a properly served notice of claim to Mayor Muriel Bowser.

## FACTS COMMON TO ALL COUNTS

18.    At all times relevant hereto, Smith was a visitor to the MPA located at 2300 Good Hope Road, SE, Washington, DC 20020.

19.    At all times relevant hereto, Defendant MP was the owner of the MPA and had a duty to its residents and visitors to keep the premises reasonably safe for its residents and visitors.

20.    At all times relevant hereto, Vantage was responsible for the management and day to day operations of the MPA and was responsible for hiring Blackout. Vantage, as agent, servant, and/or employee of MP, had a non-delegable duty to keep the premises safe for all persons, including, but not limited to, the MPA's tenants, tenant's guests, and invitees.

21.    On information and belief, Defendants, Vantage and MP, contracted with Defendant Blackout, by and through its agents, servants, and/or employees, to perform their non-delegable duties to maintain a safe environment for the MPA's tenants, tenant's guests, and invitees.

22.   Defendants, MP, Vantage, and Blackout, by and through their agents, servants, and/or employees, owed Smith, a guest and invitee, a duty to conform their conduct and the conduct of their agents, servants, and/or employees to exercise reasonable care to keep the premises safe and to avoid injuring such a person lawfully on the property.

23.   At all times relevant hereto, Defendants, Wilson and Vega, were SPOs commissioned by Defendant District and were assigned to the MPA.

24.   On or about November 1, 2015, prior to being assigned and/or commissioned as a SPO, individuals must go through a pre-assignment forty (40) hour training course designed by and promulgated by Defendant District.

25.   This training course consisted of various law enforcement topics. The first sixteen (16) hours concentrate on training the potential SPOs regarding:  (1) arrest powers; (2) search and seizure; (3) D.C. official code; and (4) use of force, amongst other areas. The next twenty-four (24) hours focus on terrorism awareness:  (1) building evacuation; (2) unattended packages; and (3) unknown substances, as well as, emergency procedures:  (1) evacuation and first aid; and (2)  customer service and interaction with tourists, amongst other areas.

26.   The final phase of SPOs' training consists of 16 hours of on the job training within 90 working days.

27.   Since November 1, 2015, Defendant District has increased the amount of training hours SPOs must undergo to eighty (80) hours of training which includes more specific training on use of force with specific carotid neck restraint techniques, prohibition of placing knees in the back of subjects and awareness and avoidance of positional asphyxia.

28.   At all times relevant herein, the training materials used with respect to the Use of Force are prepared by and disseminated to the SPOs by the District, by and through its agents,

servants and employees, including the Metropolitan Police Department, Security Officers Management Branch.

29.    SPOs are trained to use the least amount of force that is necessary to control the situation. Physical force should only be used when no other option exists to diffuse the situation and the standard to apply is that of reasonableness from the perspective of what a reasonable officer with similar training would do in the circumstances.

30.    When determining the amount of force necessary, a reasonable law enforcement officer must take into consideration some of the following factors when interacting with a subject: (1) the use of drugs and alcohol by the subject; (2) age; (3) sex; (4) height; (4) body type and weight; (5) officer to subject ratio; (6) any weapons the subject make have; and (7) any perceived skills of the subject.

31.    If and when it becomes necessary to use restraints such as handcuffs, SPOs must make every effort to avoid any tactics which may impede a subject's ability to breathe, such as chest or throat compressions or any type of airway blockages.  A subject must be positioned in a manner to allow free breathing once the subject is controlled. The subject shall never be kept in the face down position.

32.    At approximately 3:10 a.m. on November 1, 2015, Mr. Smith abruptly left an apartment building at the MPA shirtless and shoeless, ran into the parking lot of the MPA yelling for help and was overheard yelling "They are trying to kill me." Smith was obviously frightened, feared for his safety and was in distress.

33.    Reportedly, Vega saw Smith around 3:30 a.m. in the grassy area of the MPA apartment building hiding in the bushes and noticed his obvious distress. Vega radioed Wilson for assistance.

34.  Vega and Wilson followed Smith as he ran frantically around the common areas of the MPA, as well as parking lot area of a nearby garden apartment.

35.  Smith ran into 2312 Good Hope Road, SE, Washington, DC and attempted to climb the fire escape. Wilson pursued him into the building.

36.  At all times relevant hereto, Defendants Vega and Wilson were acting individually under the color of state law in their capacity as SPOs and also as agents, servants, and employees of Blackout.

37.  Upon information and belief, Defendant Wilson forcibly grabbed Smith, restrained him in a choke hold, slammed him onto the ground on the stairwell landing, and forcibly restrained Smith with his face on the ground.

38.  Vega arrived at the stairwell to see Smith lying on the floor on his stomach with his head down and Wilson straddling him with his knee in Smith's back attempting to handcuff him. Wilson asked for Vega's handcuffs at that time.

39.  Vega and Wilson proceeded to use both sets to handcuff Smith. While linking his set of handcuffs to Wilson's, Vega held Smith's head down on the floor.

40.  Such conduct and tactics used by both Wilson and Vega are in direct violation of proper procedures and protocols for the use of force, specifically Wilson and Vega used unreasonable and excessive force to subdue Smith, violated all proper rules, regulations, procedures and protocol regarding the use of handcuffs on a subject by using two sets of handcuffs, kept Smith on his stomach while handcuffed with a knee in his back, face down on the ground, in an improper position prone to causing asphyxiation, with a complete lack of effort to ensure that Smith could breath.

41.   In addition to the use of excessive force, unreasonable seizure and violation of all use of force and restraint protocol, Wilson also stole Smith's cell phone.

42.   When Officers Kevin Fitch and Esteban Alvarez of the Metropolitan Police Department responded to the incident involving Smith, Smith was lying on the floor, face down with his arms handcuffed behind his back and was not moving.  Wilson and Vega conducted themselves without regard for Smith's condition and whether he was breathing.

43.   Officers Smith and Alvarez seeing Smith on the ground, face down, handcuffed with his arms behind him and not moving or responding, inquired of Wilson and Vega as to whether Smith was breathing.  Once prompted, Defendants Vega and Wilson checked to see if Smith was breathing, and realizing he was not, began to administer Cardiopulmonary Resuscitation ("CPR") while he was still in handcuffs, in violation of proper protocol.

44.   Smith was transported via EMS to United Medical Center and was pronounced dead at 5:08 a.m. on November 1, 2015.

45.   On November 2, 2017, Sasha Osbourne, M.D. ("Dr. Osbourne") conducted an autopsy of Smith and found that Smith had received blunt trauma to the head, torso and extremities.

46.   Dr. Osbourne noted abrasions and contusions, as well as subcutaneous hemorrhages of Smith's shoulders, upper extremities and back. She also noted a small focal hemorrhage adjacent to left posterior C2 vertebrae, as well as petechial hemorrhages of the conjunctivae.  Dr. Osbourne also noted that Smith had acute cocaine toxicity.

47.   Dr. Osbourne's conclusion was that Smith died of sudden cardiac arrest while restrained complicated by acute cocaine toxicity. Dr. Osbourne also noted that the twisting of

Smith's torso was a contributing factor in his death.  Dr. Osbourne ruled Smith's manner of death as homicide.

48.  The actions of Defendants Wilson and Vega, acting individually, under color of state law, and as agents, servants, and employees of Defendant Blackout, were outrageous, unconscionable, reckless and contrary to the United States Constitution.

49.   Defendants Wilson, Vega and Blackout, by and through its agents, servants and employees, failed to use the level of  force that a reasonable law enforcement officer would have used in a similar circumstance, failed to use the minimum force required to detain Smith, failed to visually and audibly check Smith's condition and to ascertain if Smith needed medical care, failed to use authorized compliance techniques against Smith, failed to modify their use of force in relation to the amount of resistance offered by Smith, failed to timely employ resuscitation efforts, and failed to protect the life of Smith.

50.  Defendant District acted under the color of state law when it commissioned SPOs and such commission provides them with the arrest powers.

51.  Defendant District, with complete and total reckless disregard for the constitutional rights of Smith, primarily his Fourth Amendment right against illegal search and seizure, knowingly allowed SPOs, with little to no training on the use of force and restraints, to conduct themselves as vigilantes towards the citizens of the District of Columbia, contrary to all citizens' Constitutional Rights and particularly the constitutional rights of Smith.

52.  As a direct and proximate result of the excessive force, outrageous, unconscionable and reckless conduct of Defendants Wilson and Vega and their employer, Blackout, by and through its agents, servants and employees, Smith died.

53.   As a direct and proximate cause of Defendant District's complete and total disregard for the constitutional rights of the citizens of the District of Columbia, in particular Smith, Smith lost his life.

## COUNT I: VIOLATION OF 42 U.S.C. § 1983-Deprivation of Smith's Fourth Amendment Rights Against Unreasonable Seizure/Restraint
### (Defendants District, Alonso Wilson, SPO Vega, Blackout, John Doe #1, John Doe #2, and John Doe #3)

54.   Plaintiff re-alleges and incorporates by reference all of the facts and allegations of paragraphs 1 through 53 above as if fully set forth herein and further alleges:

55.   This count arises under 42 U.S.C. § 1983 and is alleged against Defendants Blackout, Alonso Wilson, SPO Vega, District, John Doe #1, John Doe #2, and John Doe #3, jointly and severally, for their acts and /or omissions in depriving Smith's right not to be subjected to unreasonable seizures under the Fourth Amendment of the U.S. Constitution.

56.   Defendant, Wilson or John Doe #1, violated Smith's Fourth Amendment right against unreasonable seizure pursuant to 42 U.S.C. § 1983 when he apprehended an obviously distraught Smith, he placed him in a choke hold, slammed him to the ground face down, used his body weight to restrain Smith with a knee in his back and handcuffed his hands behind his back with no regard to Smith's ability to continue breathing. Wilson used excessive force which would not have been used by a reasonable law enforcement officer in similar circumstances against Smith.

57.   Defendants, Vega or John Doe #2, violated Smith's Fourth Amendment right against unreasonable seizure pursuant to 42 U.S.C. § 1983, when he used excessive force to restrain Smith, wherein he used a second set of handcuffs to restrain Smith who was already on the floor, face down.  In addition, he used excessive force and violated the proper restraining protocol when he held Smith's head face down on the floor with a complete reckless disregard

for Smith's ability to breath.  Upon information and belief, Vega also incorrectly performed CPR on Smith when leaving him restrained in handcuffs.

58.  At all times relevant hereto, Defendants, Wilson, Vega, John Doe #1, and John Doe #2, were acting individually, under the color of state law, and as agents, servants and employees of Defendants, Blackout or John Doe #3.

59.  As a direct and proximate result of the aforementioned unreasonable force used by Defendants Wilson and Vega, individually, and as agents, servants, and employees of Defendant Blackout, Smith suffered serious pain and suffering and ultimately died at the hands of these Defendants.

60.  Defendant District was acting under the color of state law when it commissioned SPOs and provided them with police power and knowingly and with reckless disregard for all possible bounds of decency allowed a poorly trained police officers to run rampant over the constitutional rights of the citizens of the District of Columbia, including Smith.

WHEREFORE, Plaintiff Gerri Cherry, Personal Representative of the Estate of Alonzo Smith, requests judgment from and against Defendants, District, Alonso Wilson, SPO Vega, Blackout Investigation and Security Services Inc. and/or Black Out Security Services Inc., John Doe #1, John Doe #2, and John Doe #3, for compensatory damages, punitive damages, plus pre- and post-judgment interest, attorneys' fees, costs and all such further relief as this court may deem just and proper.

## Count II- Wrongful Death
### (All Defendants)

61.    Plaintiff re-alleges and incorporates by reference all of the facts and allegations of paragraphs 1 through 60 above as if fully set forth herein.

62.     Defendant District owed a duty of care to ensure that the SPOs commissioned had the necessary and proper training to carry out the standard of care applicable to law enforcement, primarily protecting persons from bodily harm through the use of only reasonable and necessary non-lethal force.

63.     Defendant District breached this duty of care by failing to promulgate appropriate rules, regulations, protocol, procedures, a proper training program and materials and to properly train SPOs, including, but not limited to, by only allocating a mere 16 hours of training to the use of reasonable force for commissioned SPO officers.

64.     Defendants, Wilson, Vega, John Doe #1, and John Doe #2, owed a duty of care to use reasonable and appropriate force under the circumstances when in contact with a subject and violated their duty and were otherwise negligent and violated the standards of care applicable to law enforcement by the use of excessive, unnecessary and unreasonable force to subdue and restrain Smith.

65.     Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, by and through their agents, servants and/or employees, including Defendants, Wilson, Vega, John Doe #1, and John Doe #2, owed Smith a duty to hire, train and supervise competent personnel and conform their conduct and the conduct of their agents, servants, and employees to exercise reasonable care to keep the premises safe by properly hired, trained and supervised persons trained in the proper methods and use of force and to avoid injuring a person who is lawfully on the property.

66.     Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, by and through their agents, servants and employees, including Defendants, Wilson, Vega, John Doe #1, and John Doe #2, failed to properly hire, train and supervise Defendants, Wilson,

Vega, John Doe #1, and John Doe #2, by failing to  promulgate appropriate rules, regulations, protocol, procedures, institute a proper training program and materials such that they knew or should have known that Defendants, Wilson, Vega, John Doe #1, and John Doe #2, were improperly trained and incompetent in their abilities to use the necessary and reasonable force to apprehend subjects that may cause injury to person or property.

67.     Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, by and through their agents, servants and employees, including Wilson and Vega, were negligent and otherwise breached their duty of care by allowing improperly trained and incompetent individuals such as Defendants, Wilson, Vega, John Doe #1, and John Doe #2, to be responsible for the safety and security of the residents, guests, visitors and premises of the MPA, failing to use reasonable force that a reasonable law enforcement officer would have used in a similar circumstance, failed to use the minimum force required to detain Smith, failed to visually and audibly check Smith and his condition to ascertain if he needed medical care, failed to use authorized compliance techniques against Smith, failed to modify their use of force in relation the amount of resistance offered by Smith, failed to properly restrain Smith without causing twisting of Smith's body and/or asphyxiation, failed to properly  and timely provide life saving measures.

68.     As a direct and proximate result of Defendants' negligence, Smith suffered serious physical injury resulting in his death and has otherwise been injured and damaged.

WHEREFORE, Plaintiff Gerri Cherry, Personal Representative of the Estate of Alonzo Smith on behalf of all of the beneficiaries of the Estate of Alonzo Smith, requests judgment from and against Defendants, the District, Alonso Wilson, SPO Vega,  Blackout Investigation and Security Services Inc. and/or Black Out Security Services, Inc., MP PPH, LLC, Vantage

Management Inc., John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5 for compensatory damages, pecuniary loss, loss of financial support and services of the minors and financially dependent beneficiaries, punitive damages, plus pre- and post-judgment interest, all costs, expenses, attorney's fees, and all such further relief  as this Court may deem just and proper.

### Count III- Survival Action
### (All Defendants)

69.     Plaintiff re-alleges and incorporates by reference all of the facts and allegations of paragraphs 1 through 68 above as if fully set forth herein.

70.     Defendant District owed a duty of care to ensure that the SPOs, commissioned had the necessary and proper training to carry out the standard of care applicable to law enforcement, primarily protecting persons from bodily harm through the use of only reasonable and necessary non-lethal force.

71.     MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5 by and through its agents, servants and employees, including Defendants, Wilson, Vega, John Doe #1, and John Doe #2, had a duty to act reasonably and to use due care while engaged in the business of employing, training, and supervising SPOs, who were employed to ensure the safety of the residents, visitors and premises at the MPA.

72.     Defendants, Wilson, Vega, John Doe #1, and John Doe #2, had duty to conduct themselves as a reasonable law enforcement officer would do under the circumstances and to only use reasonable and necessary force.  Defendants, Wilson, Vega, John Doe #1, and John Doe #2, violated their duty and were otherwise negligent and violated the standards of care applicable to law enforcement by the use of excessive, unnecessary, and unreasonable force to subdue and restrain Smith.

73.     Defendant District breached this duty of care by failing to promulgate appropriate rules, regulations, protocol, procedures, a proper training program and materials and to properly train SPOs, including, but not limited tom by only allocating a mere 16 hours of training to the use of reasonable force for commissioned SPO officers.

74.     Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, by and through their agents, servants and employees, including Defendants, Wilson, Vega, John Doe #1, and John Doe #2, owed a duty to hire, train and supervise competent personnel and conform their conduct and the conduct of their agents, servants, and employees to exercise reasonable care to keep the premises safe by properly hired, trained and supervised personnel trained in the proper methods and use of force to avoid injuring a person who is lawfully on the property.

75.     Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, were negligent and otherwise breached their duty of care by allowing improperly trained and incompetent individuals such as Defendants, Wilson, Vega, John Doe #1, and John Doe #2, to be responsible for the safety and security of the residents, guests, visitors and premises of the MPA.  Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, by and through their agents, servants and employees, including Defendants, Wilson, Vega, John Doe #1, and John Doe #2, failed to properly hire, train and supervise Defendants, Wilson, Vega, John Doe #1, and John Doe #2, by failing to  promulgate appropriate rules, regulations, protocol, procedures, institute a proper training program and materials such that they knew or should have known that Defendants, Wilson, Vega, John Doe #1, and John Doe #2, were improperly trained and incompetent in their abilities to use the necessary and reasonable force to apprehend subjects that may cause injury to person or property.

76.     Defendants, MP, Vantage, Blackout, John Doe #3, John Doe #4, and John Doe #5, by and through their agents, servants and employees, including Defendants, Wilson, Vega, John Doe #1, and John Doe #2, were negligent and otherwise breached their duty of care by allowing improperly trained and incompetent individuals such as Defendants, Wilson, Vega, John Doe #1, and John Doe #2, to be responsible for the safety and security of the residents, guests, visitors and premises of the MPA, failing to use reasonable force that a reasonable law enforcement officer would have used in a similar circumstance, failed to use the minimum force required to detain Smith, failed to visually and audibly check Smith and his condition to ascertain if he needed medical care, failed to use authorized compliance techniques against Smith, failed to modify their use of force in relation the amount of resistance offered by Smith, failed to properly restrain Smith without causing twisting of Smith's body and/or asphyxiation, failed to properly  and timely provide life saving measures.

77.     As a direct and proximate result of Defendants' negligence, Smith suffered serious physical injury, conscious pain and suffering, loss of earnings and earning capacity, including future earnings, and ultimately death.

WHEREFORE, Plaintiff, Gerri Cherry as the Personal Representative of the Estate of Alonzo Smith requests judgment from and against Defendants the District, Alonso Wilson, SPO Vega, Blackout Investigation and Security Services Inc. and/or Black Out Security Services, Inc., MP PPH, LLC, Vantage Management Inc., John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5 for compensatory damages, economic damages including loss of future earnings over a lifetime, and non-economic damages including conscious pain and suffering, mental anguish, and discomfort, punitive damages, pre- and post-judgment

interests, costs, attorneys' fees and such other further relief as this court may deem just and proper.

## Count IV-VIOLATION OF 42 U.S.C. § 1983-Deprivation of Smith's Fourth Amendment Rights for Failure to Appoint, Supervise, Monitor, and/or Train
### (Defendants District, Blackout, and John Doe #3)

78.     Plaintiff re-alleges and incorporates by reference all of the facts and allegations of paragraphs 1 through 77 above as if fully set forth herein.

79.     This count arises under 42 U.S.C. § 1983, and is alleged against Defendants, District, Blackout, and John Doe #3, jointly and severally, for their acts and/or omissions in failing to appoint, supervise, monitor, and/or train SPOs of the District of Columbia Metropolitan Police Department under the Fourth Amendment of the U.S. Constitution

80.     Defendants, District, Blackout, and John Doe #3, failed to appoint, supervise, monitor, train, and/or promote SPO members of the District of Columbia Metropolitan Police Department who would enforce the laws in effect in the District of Columbia. Defendants, District, Blackout, and John Doe #3, acted intentionally and with deliberate indifference to the rights of Smith and other persons.

81.     Defendants, District, Blackout, and John Doe #3, had both actual and constructive knowledge that the SPOs of the District of Columbia Metropolitan Police Department, engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Smith and other persons.

82.     Defendants, District, Blackout, and John Doe #3, had a pattern of continued inaction after having constructive notice regarding the widespread abuse of persons' rights by Defendants, Wilson, Vega, John Doe #1, and John Doe #2, and other SPOs of the Metropolitan

Police Department.

83.     Defendants, District, Blackout, and John Doe #3, failed to train its SPOs and officers in the proper application of force.  The number and frequency SPOs' use of excessive force by SPOs provided the District of Columbia sufficient notice that further training and changes to training manuals were necessary.

84.     The District of Columbia's maintenance of a patently inadequate system of investigation of excessive force and other police misconduct and complaints constitutes a custom or practice of deliberate indifference to the rights of persons who come into contact with the SPOs of the District of Columbia.

85.     Defendants, District, Blackout, and John Doe #3, actions, and failures to act, as described above, directly, proximately, and affirmatively caused the violations of Decedent's Fourth Amendment rights.

86.     As a direct and proximate result of the failure to appoint, supervise, monitor, and/or train SPOs, servants, agents, and/or employees by Defendants, District, Blackout, and John Doe #3, Smith suffered serious pain and suffering and ultimately died at the hands of Defendants Wilson and Vega.

87.     The deprivations to Decedent's Fourth Amendment rights, were committed by Defendants, Wilson, Vega, John Doe #1, and John Doe #2, pursuant to the policy, custom, and practice of the defendant District of Columbia.

WHEREFORE, Plaintiff Gerri Cherry, Personal Representative of the Estate of Alonzo Smith, requests judgment from and against Defendants, District, Blackout Investigations and Security Services Inc and/or Black Out Security Services Inc., and John Doe #3, for

compensatory damages, punitive damages, plus pre- and post-judgment interest, attorneys' fees, costs and all such further relief as this court may deem just and proper.

Respectfully submitted,

**PRICE BENOWITZ, LLP**

By:_____**/S/ John J. Yannone**_____
John J. Yannone, Esq. (DC Bar #452458)
John@Pricebenowitzlaw.com
409 7th Street, N.W., Suite 200
Washington, D.C. 20004
(202) 417-6000
(301) 244-6659 (f)
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

___**/s/ John J. Yannone**_____
John J. Yannone, Esq.